United States District Court
Southern District of Texas
**ENTERED**
March 28, 2023
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| RICHARD SCOTT SHAFER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:23-CV-00053 |
| | § | |
| BOBBY LUMPKIN, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION
## TO RETAIN CASE AND DISMISS CERTAIN CLAIMS

Plaintiff Richard Scott Shafer, a Texas inmate (TDCJ No. 1680002) appearing *pro se* and *in forma pauperis*, has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983 seeking injunctive relief and monetary damages in connection with a TDCJ policy concerning inmate mail. Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. §§1915(e)(2), 1915A.

For purposes of screening, Plaintiff has stated a First Amendment free speech claim and Fourteenth Amendment due process claim against Texas Department of Criminal Justice Correctional Institutions Division Director (TDCJ-CID) Bobby Lumpkin in his official capacity for injunctive relief. Further, Plaintiff has stated a First Amendment free speech claim and a Fourteenth Amendment due process claim against Janet Salles in her individual capacity for monetary damages. Accordingly, it is respectfully **RECOMMENDED** that these claims be **RETAINED**. The undersigned will order service

on these defendants.  The undersigned further **RECOMMENDS** Plaintiff's remaining claims be **DISMISSED**.

## I.      JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.  This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II.     PROCEDURAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS

Plaintiff is an inmate currently assigned to the McConnell Unit in Beeville, Texas. He filed this action on February 16, 2023. (D.E. 1).  On March 21, 2023, the undersigned conducted a *Spears*[1] hearing where Plaintiff was given an opportunity to explain his claims. The following representations were made either in Plaintiff's Original Complaint (D.E. 1), his Memorandum of Law (D.E.1-1), his Declaration (D.E. 1-2) or at the *Spears* hearing.

Plaintiff's claims relate to the TDCJ rules regarding inmate correspondence.  These rules are entitled Uniform Inmate Correspondence Rules and are set forth in BP-03.91.[2] The relevant sections of BP-03.91 are summarized below:

> Inmates are allowed to receive mail from general correspondents on white paper.  Mail received on colored, decorated, cardstock, construction, linen, or cotton paper will be denied.  Letters sent to inmates may not contain un-inspectable substances, such as perfume, stickers, lipstick, bodily fluid, powdery substances, or artwork using paint, glitter, glue, or tape. . . (BP-03.91 ¶ I. C.)

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

[2] BP-03.91 Uniform Inmate Correspondence Rules (texas.gov)

Inmates are also permitted to receive greeting cards postmarked within two weeks before Mother's Day, Father's Day or Christmas or at any time if received from any of five approved vendors: Ink Cards, Piegonly, Shutterfly, Snapfish and Touchnote. (BP-03.91 ¶ I. C. 4.)

White Paper is defined as "white, fragrance-free copy paper or lined notebook paper, not exceeding 8 ½ by 11, that general correspondents may use to send correspondence to inmates. Various shades of white, such as ivory or cream, will not be allowed." (BP-03.91, Definitions).

Stationery is defined as "any type of stationery, whether bought at the commissary, purchased through the eCommDirect program, or authorized for issuance to indigent inmates may be used for correspondence. Inmates shall not use homemade envelopes to correspond." (BP-03.91, Definitions).

If rejected, the inmate and the sender are provided with a statement of disapproval within three business days after the correspondence is received on a Correspondence Denial Form, which gives the inmate a "sufficiently detailed description of the rejected correspondence to permit effective use of the appeal procedures." (BP-03.91 ¶ IV. D.)

Inmates must appeal within two weeks to the Director's Review Committee "DRC" which is a body of appointed TDCJ administrators with authority to hear all appeals related to rejected correspondence, among other matters involving inmate mail. Two weeks after receiving the appeal, a written notification of decision must be sent to the parties by the DRC. (BP-03.91 ¶ V. B.)

Plaintiff alleges that on September 19, 2022, Defendant Janet Salles, a supervisor in the McConnell Unit mailroom, rejected a letter Plaintiff received from his aunt because it was written on decorated paper not approved by TDCJ BP-03.91 and the return address on the envelope was a label. Plaintiff further alleges when he received an approved letter from his aunt on October 19, 2022, he learned his father had been placed in an assisted living center after receiving treatment for  lung cancer. (D.E. 1, pp. 5-6). In his attached

declaration, Plaintiff states his aunt's letter also advised Plaintiff his father passed away on October 3, 2022.  (D.E. 1-2, pp. 2-3).

Plaintiff alleges he filed both Step 1 and Step 2 grievances which were both denied because the correspondence was on "color/decorated stationary."  (D.E. 1, pp. 4-5).  In his Step 1 grievance submitted on September 20, 2022, Plaintiff also complained Salles had not allowed Plaintiff the opportunity to photocopy his aunt's first letter.  (D.E. 1, p. 4). Plaintiff's Step 1 grievance was denied on the basis that the denial of the aunt's letter was proper under BP-03.91.  The reviewing officer further noted the denial was "non-appealable as denials for such items have been denied by the [Director's Review Committee (DRC)]."  (D.E. 1, p. 4).  Plaintiff's Step 2 grievance was also denied with the finding that the "[m]ailroom is not permitted to make copies of denied items for your receipt" and "[c]orrespondence on color/decorated stationary will be denied by the unit mailroom and is non-appealable."  (D.E. 1, p. 5).

On October 30, 2022, Plaintiff sent an I-60 request to Warden Holmes but received no response.  (D.E. 1, p. 5).  On November 21, 2022, Plaintiff wrote a letter to Director Lumpkin but received no response. (D.E. 1, p. 5).

Plaintiff asserts BP-03.91 violates the First Amendment "for limiting and oppressing contact protected under the Freedom of Speech Clause of the Constitution with inmate families and friends."  (D.E. 1, p. 4; D.E. 1-1, pp. 8-15).  During the *Spears* hearing Plaintiff testified the TDCJ inmate correspondence policy places an unnecessary restriction on his ability to send and receive mail.  He claims there is no legitimate penological reason

for the policy.  Plaintiff alleges part of the policy includes requirements that inmates buy paper and other items for correspondence through a short list of TDCJ vendors and senders of mail to inmates have similar restrictions such as having to send holiday cards from approved vendors.  Plaintiff further alleges the motivating force behind the policy is to create a source of revenue for TDCJ.  By way of example, Plaintiff asserts 50 sheets of approved correspondence paper costs $3.00.  Plaintiff argues the policy does not have a "verifiable penological interest other than simple profiteering" because it requires inmates and those wishing to correspond with them to purchase correspondence items from Texas Correctional Industries, an affiliate of TDCJ, at an inflated price.  (D.E. 1, pp. 6-7; D.E. 1-1, pp. 16-19).

Plaintiff also alleges a due process claim under the Fourteenth Amendment asserting the policy does not provide "those who would be affected by this policy an opportunity to be heard at a meaningful time and in a meaningful manner" as well as an Eighth Amendment claim alleging it is cruel and unusual punishment to deny inmates family correspondence.  (D.E. 1, pp. 3, 6; D.E. 1-1, pp. 19-21).  Plaintiff testified during the *Spears* hearing that while BP-03.91 provides inmates an appeal procedure for rejected mail, when he tried to appeal Defendant Salles told Plaintiff mail rejected under the policy was not appealable.  This denial of his right to appeal was allegedly documented by Defendant Salles on a TDCJ inmate correspondence denial form regarding the September 2022 letter from his aunt.  Plaintiff's complaint also alleges the response to his Step 1 grievance on this matter informed him that "[t]his denial is non-appealable as denials for such items have

consistently been denied by the DRC." (D.E. 1, p. 4).  Further, Plaintiff was again informed on the TDCJ Step 2 grievance response that "[c]orrespondence on color/decorated stationary will be denied by the unit mailroom and is non-appealable."  (D.E. 1, p. 5).

Plaintiff further asserts BP-03.91 violates Article 6 of the United States Constitution "for enacting a policy that directly conflicts with Federal Laws and/or Treaties enacted." Plaintiff alleges the policy conflicts with Rule 43(1)(e) of the United Nations Standard Minimum Rules for the Treatment of Prisoners (the Nelson Mandela Rules). Plaintiff alleges this rule prohibits collective punishment and the TDCJ inmate correspondence policy violates the rule because it "penalizes all inmates and their families by restricting correspondence, correspondence materials, greeting cards, pictures, and other mailed items mentioned in this policy."  (D.E. 1, p. 3; D.E. 1-1, pp. 15-16, 22-23).

## III.  LEGAL STANDARD

When a prisoner seeks to proceed *in forma pauperis* the Court shall evaluate the complaint and dismiss it without service of process if the Court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. *See* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant).  A claim is frivolous if it has no arguable basis in law or fact.  *Neitzke v. Williams,* 490 U.S. 319 (1989).  A claim has no arguable basis in law if it is based on an

indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998). A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

A complaint is deficient and is subject to summary dismissal under Rule 12(b)(6) if a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999). "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim. Thus, the Court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that Defendant is liable. *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation. *Twombly*, 550 U.S. at 555. As long as the complaint, taken as a

whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed. *Id.*

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988). A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

## IV.   DISCUSSION

### A. First Amendment

The First Amendment provides that Congress shall make no law … abridging the freedom of speech . . .. U.S. Const., amend I. The First Amendment has been made applicable to the States through the Fourteenth Amendment. U.S. Const. amend. XIV. A prisoner retains those First Amendment rights that are not inconsistent with his or her status as a prisoner or with the legitimate penological interests of the corrections system. *Pell v. Procunier*, 417 U.S. 817, 822 (1974). An abridgement of the right of free speech occurs when government engages in unjustified interference with communication. *See Brewer v. Wilkinson*, 3 F.3d 816, 820 (5th Cir. 1993). Inmates retain a First Amendment right to be free from mail censorship not "'reasonably related to legitimate penological interests.'"

*Schwarzer v. Wainwright*, No. 19-41011, 2021 WL 6060002, at *1 (5th Cir. Dec. 17, 2021)

(quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)); *see Thornburgh v. Abbott*, 490 U.S.

401, 409 (1989).

    *Schwarzer* is instructive because the facts and claims are similar to the instant case.

In *Schwarzer,* the Fifth reversed the district court's dismissal of Plaintiff's claims at the

screening stage.  Schwarzer claimed he was wrongly denied mail in the form of the blank

character sheets and telephone log forms, and that BP-03.91 violated his free speech rights

insofar as it prohibits inmates from receiving stationery supplies through the mail.  *Id.*  The

Fifth Circuit held the district court did not analyze Schwarzer's First Amendment claims

and the record did not establish those claims were "based on an indisputably meritless legal

theory."  *Id.* (citing *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999)).

    In the instant case, Plaintiff asserts the policy violated the First Amendment "for

limiting and oppressing contact protected under the Freedom of Speech Clause of the

Constitution with inmate families and friends."  (D.E. 1, p. 3 and D.E. 1-1, pp. 8-15).

Plaintiff complains the policy restrictions on incoming mail restrict his ability to receive

mail from friends and family.  Plaintiff has referenced specific instances where his mail

has been intercepted and not delivered pursuant to the policy restricting the type or color

of paper used and because of envelopes having return address stickers rather than being

handwritten.  When his mail is rejected, Plaintiff alleges he is notified of the rejection, but

it is up to him to explain to the sender why the mail was not delivered.

Consistent with the holding in *Schwarzer*, the undersigned does not find Plaintiff's First Amendment claims are frivolous.  Plaintiff has alleged sufficient facts in support of his legal conclusions giving rise to a plausible. When analyzing whether a prison policy violates the First Amendment the Court must consider whether the regulation is rationally related to a legitimate penological goal. *Prison Legal News v. Livingston*, 683 F.3d 201, 214 (5th Cir. 2012).  However, conducting that analysis at the screening stage is premature. The undersigned is aware of cases finding BP-03.91 did not result in a constitutionally infirm infringement of an inmate's rights, however, those findings were made on the defendants' motions for summary judgment.  *See Lopez v. Lumpkin*, No. 4:20-CV-3307, 2022 WL 18399530 (S.D. Tex. Nov. 22, 2022) and *Smith v. Lumpkin*, No. W-20-CA-263-ADA, 2020 WL 7426710 (W.D. Tex. Dec. 18, 2020).

Regarding Plaintiff's First Amendment claim for injunctive relief, Director Lumpkin is an official who is capable of ensuring compliance with an order requiring injunctive relief in the event Plaintiff prevails.  Regarding Plaintiff's First Amendment claim for monetary damages, Defendant Salles was not only the mail room supervisor, she was personally involved in the enforcement and interpretation of the TDCJ Correspondence policy and the interception and non-delivery of Plaintiff's mail.

Therefore, the undersigned recommends the Court retain Plaintiff's First Amendment free speech claim against Texas Department of Criminal Justice Correctional Institutions Division Director (TDCJ-CID) Bobby Lumpkin in his official capacity for injunctive relief as to Plaintiff's complaints about mail sent to him.  The undesigned also

recommends Plaintiff's First Amendment free speech claim regarding incoming inmate mail against Janet Salles in her individual capacity for monetary damages be retained.

### B. Fourteenth Amendment – Due Process

Plaintiff claims his due process rights were violated as BP-03.91 does not provide "those who would be affected by this policy an opportunity to be heard at a meaningful time and in a meaningful manner." (D.E. 1, pp. 3, 6; D.E. 1-1, pp. 19-21). BP-03.91 Section V contains provisions setting forth a procedure to appeal the decision to deny items being sent or received in the inmate mail system. These procedures include the right of an inmate to appeal and make written submissions and to have those submissions reviewed by a Director's Review Committee ("DRC"). However, Plaintiff alleges the policy is not being followed. Defendant Salles allegedly informed plaintiff orally and in writing that the decision to reject correspondence from his aunt is "non-appealable." The Fifth Circuit has explained:

> Inmates are entitled to procedural due process protections in connection with the denial of mail, including notice and an opportunity to be heard. *See Procunier v. Martinez*, 416 U.S. 396, 417-19 (1974), *overruled on other grounds; Prison Legal News v. Livingston*, 683 F.3d 201, 222 (5th Cir. 2012). Traditional procedural due process arguably requires a right to object and a "right to participate in DRC's consideration of the appeal, even informally or through written submissions." *Prison Legal News*, 683 F.3d at 224 (dictum); *see United States v. Gonzalez*, 250 F.3d 923, 926 (5th Cir. 2001) (noting that dicta are nonbinding but may be persuasive).

*Schwarzer,* 2021 WL 6060002, at *1.

Based on Plaintiff's allegations of being denied an opportunity to appeal the decisions of unit mail room staff with regard to his inmate mail, Plaintiff has stated a viable claim.

Regarding Plaintiff's Due Process claim for injunctive relief, Director Lumpkin is an official who is capable of ensuring compliance with an order requiring injunctive relief. Regarding Plaintiff's Due Process claim for monetary damages, Defendant Salles was personally involved in the enforcement and interpretation of the TDCJ Correspondence policy and the interception and non-delivery of Plaintiff's mail.  Plaintiff has stated a due process claim against Defendant Salles.

Therefore, the undersigned recommends the Court retain Plaintiff's due process claims against Defendant Lumpkin in his official capacity for injunctive relief and also retain Plaintiff's due process claims against Defendant Salles in her individual capacity for monetary damages.

### C. Eighth Amendment

An Eighth Amendment violation occurs when a prison official acts with deliberate indifference to an inmate's health and safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  The test for deliberate indifference has both an objective and subjective prong. *Id.* at 839.  Under the objective prong, the inmate "must first prove objective exposure to a substantial risk of serious harm." *Trevino v. Livingston*, No. 3:14-CV-52, 2017 WL 1013089, at *3 (S.D. Tex. Mar. 13, 2017) (citing *Gobert v. Caldwell*, 463 F.3d 339, 345-46 (5th Cir. 2006)).  To prove a constitutional violation, an inmate need not show a death

or serious injury already has occurred, but rather that there is a "substantial risk of serious harm." *Ball v. LeBlanc*, 792 F.3d 584, 593 (5th Cir. 2015) (citing *Gates v. Cook*, 376 F.3d 323, 333 (5th Cir. 2004)).  To prove the subjective prong of the deliberate indifference test, the inmate "must establish that the defendants were aware of an excessive [or substantial] risk to the plaintiff's health or safety, and yet consciously disregarded the risk." *Cook v. Crow*, No. 1:20-CV-85, 2021 WL 6206795, at *3 (E.D. Tex. July 26, 2021), *report and recommendation adopted*, 2022 WL 23169 (E.D. Tex. Jan. 3, 2022) (citing *Farmer*, 511 U.S. at 397 and *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002)).

"Deliberate indifference is an extremely high standard to meet." *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001). The Fifth Circuit has "consistently recognized … that 'deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm.'" *Dyer v. Houston*, 964 F.3d 374, 381 (5th Cir. 2020) (quoting *Thompson*, 245 F.3d at 458-59). *See also Aguirre v. City of San Antonio*, 995 F.3d 395, 420 (5th Cir. 2021) ("Negligence or even gross negligence is not enough, the officials must have actual knowledge of the substantial risk").  The Supreme Court further explained "an official's failure to alleviate a significant risk that he should have perceived but did not" falls short of constituting deliberate indifference. *Farmer*, 511 U.S. at 838.  Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of humankind. *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997) (citations omitted).

Plaintiff claims Defendants showed deliberate indifference to his constitutional need for contact with the outside world by denying his family's correspondence before his father passed away.  (D.E. 1-1, pp. 19-20). Plaintiff's allegations fall short of satisfying either the objective or subjective prong of deliberate indifference to Plaintiff's health and safety.  Plaintiff's own testimony indicates he can send and receive mail.  Even liberally construing Plaintiff's pleading, the undersigned finds the restrictions imposed on him by the TDCJ inmate correspondence policy do not amount to cruel and unusual punishment. Therefore, the undersigned recommends Plaintiff's Eighth Amendment claims be dismissed.

### D. Article VI of the U.S. Constitution and U.N. Standards for Treatment of Prisoners

Plaintiff claims a provision of BP-03.91 implicates Article Six of the Constitution and somehow conflicts with constitutional amendments and Rule 43(1)(e) of the United Nations Standard Minimum Rules for the Treatment of Prisoners. (D.E. 1-1, pp. 15-16). Plaintiff cannot state a viable claim based on the Nelson Mandela Rules because the rules are not a treaty, are not binding on the United States and do not create a private right of action.  *Renfro v. W. Valley Det. Ctr. Classification Staff*, No. 5:21-CV-01414, 2022 WL 18228280, at *4 (C.D. Cal. June 3, 2022) citing *Serra v. Lappin*, 600 F.3d 1191, 1197 (9th Cir. 2010) and *Wainwright v. Med. Dep't Cuyahoga Cty. Corr. Ctr.*, 2018 WL 2077507, at *3 n.41 (N.D. Ohio May 4, 2018).  Plaintiff alleges nothing rational to explain how any provision of BP-03.91 runs afoul of any treaty entered into by the United States, including the United Nations Standard Minimum Rules for the Treatment of Prisoners. Therefore,

the undersigned recommends the Court dismiss Plaintiff's claims based on Article Six of the Constitution or the United Nations Standard Minimum Rules for the Treatment of Prisoners.

### E. Plaintiff's complaints about the TDCJ policy requiring certain correspondence materials to be purchased from TDCJ approved venders

Plaintiff also complains the TDCJ inmate correspondence policy restricts his ability to send outgoing mail because he has to purchase paper through the TDCJ commissary or venders approved by TDCJ.  Plaintiff's primary complaint is that purchasing supplies for correspondence through approved venders is more expensive than other sources.  Plaintiff also alleges the TDCJ inmate correspondence policy places similar requirements on persons sending holiday or greeting cards to inmates.

Plaintiff references BP-03.91(I)(C)(3) which provides:

> Inmates are not allowed to receive packages containing stationary supplies. Packages or publications may be sent to inmates by publishers or publication suppliers, including bookstores. The TDCJ shall accept delivery of packages from public carriers only, such as USPS, UPS, FedEx, or DHL. Special provisions are made for packages to be received from suppliers for craft shop operations.  All incoming packages shall be subject to inspection. Inmates shall be notified when authorized packages are denied.

(D.E. 1-1, p. 16).  Plaintiff claims TDCJ revised BP-03.91 without warning in 2013 by restricting correspondence materials from being purchased by outside vendors, who would then ship the materials to the inmate's unit mailrooms.  (D.E. 1-1, p. 16).

According to Plaintiff, these revisions now prevent inmates and their families from purchasing stationary and other correspondence from vendors.  (D.E. 1-1, p. 17).  Plaintiff

states inmates and their families are now forced to pay more for cheaply made and poor quality products from Texas Correctional Industries.  (D.E. 1-1, p. 18).

Plaintiff argues the new BP-03.91 provisions violate the holdings in *Guajardo v. Estelle*, 580 F.2d 748 (5th Cir. 1978) overruled in part on other grounds by *Thornburgh v. Abbott*, 490 U.S. 401, 109 (1989).  Plaintiff overstates the applicability of *Guajardo.*  As noted in *Gamarsh v. Bell*, No. 6:15CV140, 2017 WL 7053987, at *3 (E.D. Tex. Nov. 7, 2017), report and recommendation adopted, No. 6:15CV140, 2018 WL 559796 (E.D. Tex. Jan. 24, 2018), "[w]hile Guajardo analyzed the constitutionality of Texas' prison correspondence rules, the court was more concerned with mail censorship rather than indigent mail supplies. Specifically, inmates challenged then Texas Department of Corrections' (TDC) correspondence polices insofar as inmate mail was read by prison officials, publications and magazines could be censored, and inmate mail was numerically restricted to a list of ten persons who had to be approved."  In *Guajardo*, among other things, the Fifth Circuit affirmed the district court finding that prison rules limiting books received by inmates to those sent by publishers or suppliers to be constitutional. *Guajardo*, 580 F.2d 748 at 762.  Plaintiff's claims regarding the application of TDCJ policy concerning inmates being required to purchase correspondence materials through the TDCJ commissary or approved venders are not supported by the decision in *Guajardo*.

Additionally, claims regarding the high prices of items for purchase in prison commissaries have uniformly been rejected.  *Recio v. Garcia*, No. 2:15-CV-0279, 2015 WL 9308273, at *2 (N.D. Tex. Dec. 21, 2015).

Regardless of the identity of the person(s) responsible for setting commissary prices, inmates have no constitutional right of access to a prison gift or snack shop. *Tokar v. Armontrout*, 97 F.3d 1078, 1083 (8th Cir. 1996). If they can access such a shop, there is no legal basis to support a claim that inmates must be offered items for purchase at or near cost, *French v. Butterworth*, 614 F.2d 23, 25 (1st Cir. 1980), or at the lowest possible price. *Lucas v. Rivera*, 2009 WL 9002355 *2 (D.S.C. March 31, 2009). A prisoner's claim that he was overcharged for goods at the prison commissary fails to state a constitutional claim. *McCall v. Keefe Supply Co*., 2009 WL 21716435 (10th Cir. 2009).

*See also Lineberry v. United States*, 2009 WL 499763 (E.D. Tex. Feb. 27, 2009) (rejecting inmate's claim that his constitutional rights were violated based upon the prison store charging excessive prices); *Hopkins v. Keefe Commissary Network Sales*, 2007 WL 2080480 *5 (W.D. Pa. July 12, 2007) ("inmates have no federal constitutional right to purchase items from the commissary at any particular price or to have the commissary restrained from charging even exorbitant prices"); *Collins v. Virginia*, 2006 WL 1587467 *1 (W.D. Va. June 6, 2006) ("inmates have no constitutionally protected interest in purchasing stamps, food substances, or any other good through the prison commissary at the cheapest price possible.") Plaintiff's claims of excessively high prices lack an arguable basis in law and are frivolous. *Neitzke v. Williams*, 490 U.S. 319, 109 S. Ct. 1827, 104 L.Ed.2d 338 (1989).

*Recio,* 2015 WL 9308273, at *2.

Plaintiff has failed to state a claim regarding TDCJ policies requiring him to purchase correspondence materials, such as paper and pens, from the TDCJ commissary or approved vendors. Therefore, the undersigned recommends these claims be dismissed.

### F.  Defendant Senior Warden E. Holmes

Plaintiff alleges Defendant Holmes is the Senior Warden at the McConnell Unit and is legally responsible for the operations there and the welfare of all inmates incarcerated in that facility. Plaintiff alleges Warden Holmes never responded to Plaintiff's correspondence about Plaintiff's complaints with the inmate mail rules and procedures.

Plaintiff sues Warden Holmes in his official capacity.  (D.E. 1, Page 2).  Plaintiff appears to only be seeking injunctive relief from Warden Holmes.  However, to the extent his complaint could be construed as a claim for money damages against Warden Holmes, that claim is not cognizable.  "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983).  Warden Holmes had no personal involvement in the facts and there are no facts to indicate he implemented an unconstitutional policy at issue in this case.

With regard to his claims for injunctive relief, were Plaintiff to prevail, Defendant TDCJ Director Lumpkin would be able to ensure compliance with any court-ordered injunctive relief.  Warden Holmes is an unnecessary party.  Should the Court determine at a later time that Warden Holmes is the appropriate party to provide injunctive relief, he may be substituted for Director Lumpkin.

Accordingly, it is respectfully recommended that all of Plaintiff's claims against Warden Holmes be dismissed.

### G. Official Capacity Claims and the Eleventh Amendment

It does not appear that Plaintiff is attempting to raise a claim against any defendant in his official capacity for monetary damages.  However, to the extent his complaint could be construed as a claim against any defendant in his or her official capacity for monetary damages, those claims are barred by the Eleventh Amendment. *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (Eleventh Amendment bars prisoner's suit for money damages against prison officials in their official capacities).

18 / 21

### H. Claims Not Specifically Addressed in this Memorandum

To ensure justice and access to the courts, courts interpret pleadings of *pro se* litigants liberally. *See United States v. Robinson*, 78 F.3d 172, 174 (5th Cir. 1996) (citing *United States v. Santora*, 711 F.2d 41, 42 (5th Cir. 1983)). *Pro se* actions will not be dismissed based on technical pleading defects and should be construed to ensure such claims are given fair and meaningful consideration despite the unrepresented litigant's unfamiliarity with the law. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *See also Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (*Pro se* parties are normally accorded more leniency in the construction of their pleadings).

The undersigned has liberally construed Plaintiff's pleadings to give his claims fair and meaningful consideration. The undersigned has attempted to articulate and analyze Plaintiff's claims in an impartial manner consistent with providing appropriate leniency to pro se litigants while at the same time requiring compliance with applicable pleading and screening standards. To the extent Plaintiff is attempting to raise a claim not specifically addressed by the undersigned in this Memorandum and Recommendation, Plaintiff has failed to state such claim with sufficient factual detail or clarity to allow the claim to be identified or analyzed by the Court.

As stated previously, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Again, Plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that Defendant is liable. *Id.*; *Twombly*, 550 U.S. at 556. Further, the

factual allegations must raise Plaintiff's claim for relief above the level of mere speculation. *Twombly*, 550 U.S. at 555. Therefore, Plaintiff is advised any claim not addressed in this Memorandum and Recommendation is not currently before this Court because Plaintiff has failed to allege sufficient facts or state such claims clearly.

## V.   RECOMMENDATION

For purposes of screening, Plaintiff has stated a First Amendment free speech claim and Fourteenth Amendment Due Process Claim against Texas Department of Criminal Justice Correctional Institutions Division Director (TDCJ-CID) Bobby Lumpkin in his official capacity for injunctive relief. Further, Plaintiff has stated a First Amendment free speech claim and a Fourteenth Amendment due process claim against Janet Salles in her individual capacity for monetary damages. Accordingly, it is respectfully **RECOMMENDED** that these claims be **RETAINED**. The undersigned will order service on these defendants. The undersigned further **RECOMMENDS** Plaintiff's remaining claims be **DISMISSED**.

Respectfully submitted on March 28, 2023.

Jason B. Libby
United States Magistrate Judge

## <u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).