United States District Court
Southern District of Texas
**ENTERED**
March 11, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| RICHARD SCOTT SHAFER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:23-CV-00053 |
| | § | |
| BOBBY LUMPKIN, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff Richard Scott Shafer is a Texas inmate appearing *pro se* and *in forma pauperis*. He has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983 seeking injunctive relief and monetary damages in connection with a TDCJ policy concerning inmate mail. Pending is the Defendants' Motion for Summary Judgment. (D.E. 46). For the reasons set forth below, the undersigned RECOMMENDS Defendants' Motion for Summary Judgment (D.E. 46) be GRANTED and this case be DISMISSED.

### I. JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II.     BACKGROUND

### A. Procedural Background

Plaintiff is an inmate currently assigned to the TDCJ Stringfellow Unit in Rosharon, Texas, however, the relevant facts of this case arose when Plaintiff was assigned to the McConnell Unit in Beeville, Texas in 2022. He filed this action on February 16, 2023. (D.E. 1). On March 21, 2023, the undersigned conducted a *Spears*[1] hearing where Plaintiff was given an opportunity to explain his claims. On March 28, 2023, the undersigned entered a screening Memorandum and Recommendation finding that Plaintiff had stated a First Amendment free speech claim and Fourteenth Amendment due process claim against Texas Department of Criminal Justice Correctional Institutions Division Director (TDCJ-CID) Bobby Lumpkin in his official capacity for injunctive relief. (D.E. 12). The undersigned further recommended that Plaintiff had stated a First Amendment free speech claim and a Fourteenth Amendment due process claim against McConnell Unit mail room supervisor Janet Salles in her individual capacity for monetary damages. (D.E. 12). Additionally, the undersigned recommended Plaintiff's remaining claims be dismissed. (D.E. 12). United States District Judge David Morales adopted the undersigned's screening memorandum on February 5, 2024. (D.E. 51).

On March 28, 2023, the undersigned ordered service on Defendants. (D.E. 13). The Defendants filed an Answer on May 9, 2023. (D.E. 20). A scheduling order was entered

---

[1]*Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

on May 11, 2023. (D.E. 21). On November 27, 2023, Defendants filed the instant Motion for Summary Judgment. (D.E. 46). Plaintiff filed a response on December 15, 2023. (D.E. 48).

### B.  Summary Judgment Facts and Plaintiff's Claims[2]

On September 19, 2022, Defendant Janet Salles, a supervisor in the McConnell Unit mailroom, rejected a letter Plaintiff received from his aunt because the letter was written on decorated paper and had a return address sticker. TDCJ Uniform Correspondence Policy BP-03.91 in effect at the time prohibited inmates from receiving mail on colored or decorated paper or having a return address sticker. (D.E. 12, pp. 2-3; D.E. 46-1, p. 2). Plaintiff later found out that in the rejected letter, his aunt was trying to notify him that his father had passed away. Plaintiff filed Step 1 and Step 2 grievances. (D.E. 1, pp. 4-5). Plaintiff's Step 1 grievance was denied on the basis that the denial of the aunt's letter was proper under BP-03.91 because the letter was on colored paper. (D.E. 1, pp. 4-5). The reviewing officer further noted the denial was "non-appealable as denials for such items have been denied by the [Director's Review Committee (DRC)]." (D.E. 1, p. 4). Plaintiff's Step 2 grievance was also denied with the finding that the "[m]ailroom is not permitted to make copies of denied items for your receipt" and "[c]orrespondence on color/decorated stationary will be denied by the unit mailroom and is non-appealable." (D.E. 1, p. 5).

---

[2] Plaintiff's remaining claims against Director Lumpkin and Ms. Salles were made either in Plaintiff's Original Complaint (D.E. 1), his Memorandum of Law (D.E.1-1), his Declaration (D.E. 1-2) or during his *Spears* hearing testimony. This M&R does not address any of Plaintiff's other claims which have all been dismissed on screening. (D.E. 12, D.E. 51).

Plaintiff asserts BP-03.91 violates the First Amendment "for limiting and oppressing contact protected under the Freedom of Speech Clause of the Constitution with inmate families and friends." (D.E. 1, p. 4; D.E. 1-1, pp. 8-15). During the *Spears* hearing Plaintiff testified the TDCJ inmate correspondence policy places an unnecessary restriction on his ability to send and receive mail. He claims there is no legitimate penological reason for the policy. (D.E. 17, p. 9).

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits, and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002).

The Court may not weigh the evidence or evaluate the credibility of witnesses. *Id.* Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56; *see also Cormier v. Pennzoil*

*Exploration & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992) (Refusing to consider affidavits that relied on hearsay statements); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) (Stating that courts cannot consider hearsay evidence in affidavits and depositions). Unauthenticated and unverified documents do not constitute proper summary judgment evidence. *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The evidence must be evaluated under the summary judgment standard to determine whether the moving party has shown the absence of a genuine issue of material fact. "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56; *Anderson*, 477 U.S. at 248. The nonmovant may not rely merely on allegations, denials in a pleading or unsubstantiated assertions that a fact issue exists, but must set forth specific facts showing the existence of a genuine issue of material fact concerning every element of its cause(s) of action. *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998). "After the nonmovant has been given an

opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni*, 278 F.3d at 451.

## IV. ANALYSIS

### A. Plaintiff's Claims For Injunctive Relief

The undersigned found in the screening memorandum that Plaintiff had stated a First Amendment free speech claim and Fourteenth Amendment due process claim against Director Lumpkin in his official capacity for injunctive relief. Plaintiff's First Amendment claim arose from the rejection of a letter to Plaintiff because it was on colored paper and had an address label in violation of the TDCJ inmate correspondence policy. Plaintiff's Fourteenth Amendment due process claim arose out of Plaintiff's claim that he was not provided an opportunity to be heard regarding his belief that the policy violated his First Amendment rights.

The TDCJ policy applicable when Plaintiff's letter was refused in September 2022 has changed. At that time, the policy prohibited inmates from receiving letters on colored or decorated paper or paper containing stickers, including return address stickers. (D.E. 46-2). This policy was put in place because TDCJ officials frequently found colored or decorated paper and stickers to be soaked with illegal controlled substances and then dried. (D.E. 46-2). Inmates who received such drug soaked letters would then use or extract the controlled substances from the paper. Apparently, it is more difficult to detect drugs soaked on colored and decorated paper than plain white paper. Nevertheless, TDCJ has significantly revised its inmate correspondence policy since September 2022, when

Plaintiff's letter was rejected. (D.E. 46-1). Under the current policy set forth in BP-03.91, all non-legal inmate mail is scanned at a central location and digitized. (D.E. 46-1, p. 3). Inmates then access the digitized correspondence on electronic tablets, which all inmates are provided. (D.E. 46-1, p. 3). Inmate mail is no longer rejected based on the type of paper on which the correspondence is received. (D.E. 46-1, p. 3). There is no further injunctive relief necessary or available to Plaintiff because the problem of inmate mail being rejected because it is written on colored paper has been resolved. Further, Plaintiff's due process claim for injunctive relief is also moot because letters on colored paper will no longer be rejected and there will be nothing to appeal in this regard.

Additionally, the facts of Plaintiff's case arose while Plaintiff was an inmate at the McConnell Unit in Beeville, Texas. Plaintiff is now housed at the Stringfellow Unit in Rosharon, Texas. While it appears Plaintiff's claims relate to the TDCJ correspondence policy applicable to all TDCJ facilities, whatever complaints Plaintiff had about the mail procedures at the McConnell Unit are no longer at issue because he has been moved from that unit.

In short, Plaintiff's complaint no longer presents a live controversy for injunctive relief now that the new policy has resolved the complained of matter. *Powell v. McCormack*, 395 U.S. 486, 496 (1969) (A case becomes moot "when the issues presented are no longer 'live'"); *American Med. Ass'n v. Bowen*, 857 F.2d 267, 270 (5th Cir. 1988) ("If a dispute has been resolved or if it has evanesced because of changed circumstances, including the passage of time, it is considered moot.") (citation omitted); *Escobar v. Barr*,

824 F. App'x 300 (5th Cir. 2020) ("If, during the pendency of litigation, the complaining party receives the relief he originally sought to obtain in court, the action must be dismissed for lack of subject-matter jurisdiction.") (citations omitted). While Plaintiff may have complaints about the new policy, those potential claims are not before the Court in this action.

Additionally, Plaintiff's claims against Director Lumpkin are barred by the Eleventh Amendment. Unless expressly waived, the Eleventh Amendment bars an action in federal court by a citizen of a state against his own state, including a state agency. *Martinez v. Tex. Dep't of Criminal Justice*, 300 F.3d 567, 573 (5th Cir. 2002) (citing *Hughes v. Savell*, 902 F.2d 376, 377 (5th Cir.1990)). A limited exception to the Eleventh Amendment exists under the *Ex Parte Young* doctrine. *Ex Parte Young*, 209 U.S. 123 (1908). The *Ex Parte Young* exception to Eleventh Amendment immunity is available where a suit is brought: (1) against a state official, seeking (2) only prospective injunctive relief (3) in order to end a "continuing violation of federal law." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 73 (1996) (citations omitted). Because the inmate policy prohibiting inmate mail on colored paper has changed and has rendered Plaintiff's claim for injunctive relief moot, there is no plausible argument that there is a continuing violation of law. Thus, the *Ex Parte Young* exception to Eleventh Amendment immunity is inapplicable in the instant case.

Therefore, the undersigned recommends the Court Grant Director Lumpkin's Motion for Summary Judgment and DISMISS all of Plaintiff's claims for injunctive relief because those claims are moot and are further barred by the Eleventh Amendment.

### B. Plaintiff's Claims Against Janet Salles

#### 1. First Amendment Claim – Refused Mail

Ms. Salles is the McConnell Unit mail room supervisor who is alleged to have been the person who rejected the letter to Plaintiff in September 2022 because the letter was on colored paper and contained a return address sticker. In the screening M&R, the undersigned found Plaintiff had stated a First Amendment free speech claim and a Fourteenth Amendment due process claim against Janet Salles in her individual capacity for monetary damages. (D.E. 12). The First Amendment claim arose out of Ms. Salles rejecting the letter. The Eleventh Amendment due process claim arose out of Plaintiff allegedly not being provided an opportunity to be heard regarding the rejection of the letter. Plaintiff alleges Defendant Salles told Plaintiff he was not allowed to appeal the rejection of the letter under then applicable TDCJ policy.

Defendant Salles, in her motion for summary judgment, seeks dismissal of claims against her because she is protected by the doctrine of qualified immunity. "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A plaintiff can overcome the defense by showing that (1) the official violated a statutory or constitutional right and (2) that the right was clearly established at the time of the challenged conduct. *Stramaski v. Lawley*, 44 F.4th 318, 328 (5th Cir. 2022). (citing *Voss v. Goode*, 954 F.3d 234, 238 (5th Cir. 2020). The

undisputed summary judgment evidence establishes that Ms. Salles did not violate a statutory or constitutional right of Plaintiff. Further, any theoretical right of Plaintiff to receive mail on colored paper or with sticker is not clearly established.

The First Amendment provides that Congress shall make no law … abridging the freedom of speech . . .. U.S. Const., amend I. The First Amendment has been made applicable to the States through the Fourteenth Amendment. U.S. Const. amend. XIV. A prisoner retains those First Amendment rights that are not inconsistent with his or her status as a prisoner or with the legitimate penological interests of the corrections system. *Pell v. Procunier*, 417 U.S. 817, 822 (1974). An abridgement of the right of free speech occurs when government engages in unjustified interference with communication. *See Brewer v. Wilkinson*, 3 F.3d 816, 820 (5th Cir. 1993). Inmates retain a First Amendment right to be free from mail censorship not "'reasonably related to legitimate penological interests.'" *Schwarzer v. Wainwright*, No. 19-41011, 2021 WL 6060002, at *1 (5th Cir. Dec. 17, 2021) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)); *see Thornburgh v. Abbott*, 490 U.S. 401, 409 (1989).

With regard to whether Ms. Salles violated a statutory or constitutional right of Plaintiff by refusing the letter to Plaintiff on colored paper, the undersigned recognizes that Plaintiff as an inmate has a First Amendment right to receive mail. *Prison Legal News v. Livingston*, 683 F.3d 201, 214 (5th Cir. 2012). However, this case does not involve Plaintiff being deprived of his right to receive mail. TDCJ officials recognize Plaintiff's right to receive mail and have adopted policies to secure that right. Plaintiff's claim

involves one instance of a letter being refused because the letter was on colored paper and contained a return address sticker in violation of TDCJ policy. Plaintiff does not have a constitutional right to receive mail on colored paper or with return address stickers.

When analyzing whether a prison policy violates the First Amendment, the Court must consider whether the regulation is rationally related to a legitimate penological goal. *Id.* The TDCJ had a legitimate penological reason for the policy at issue in the instant case. Colored paper had been determined to be an implement of drug trafficking in the prison environment. (D.E. 46-1). Thus, the limited infringement of Plaintiff's right to receive mail was not unjustified. The policy was content neutral and logically advanced the policy of institutional security. Those penological interests were to prevent narcotics from being smuggled into the prison system. Where a regulation restricts First Amendment rights in a neutral fashion, it is more likely to withstand judicial scrutiny. *McAlister v. Livingston*, 348 Fed. Appx. 923, 931-932 (2009) (citing *Thornburgh v. Abbott*, 490 U.S. 401, 415 (1989)). The undersigned recommends Ms. Salles's Motion for Summary Judgment be GRANTED as to Plaintiff's First Amendment Claim because she is entitled to qualified immunity.

### 2. Fourteenth Amendment Due Process Claim

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. Plaintiff's due process claim arose in connection with his allegation that the former policy did not provide "those who would be affected by this policy an opportunity

to be heard at a meaningful time and in a meaningful manner" (D.E. 1, pp. 3, 6; D.E. 1-1, pp. 19-21). Plaintiff testified during the *Spears* hearing that while BP-03.91 provides inmates an appeal procedure for rejected mail, when he tried to appeal, Defendant Salles told Plaintiff mail rejected under the policy was not appealable. In the context of inmate mail, the Fifth Circuit has explained:

> Inmates are entitled to procedural due process protections in connection with the denial of mail, including notice and an opportunity to be heard. *See Procunier v. Martinez*, 416 U.S. 396, 417-19 (1974), *overruled on other grounds; Prison Legal News v. Livingston*, 683 F.3d 201, 222 (5th Cir. 2012). Traditional procedural due process arguably requires a right to object and a "right to participate in DRC's consideration of the appeal, even informally or through written submissions." *Prison Legal News*, 683 F.3d at 224 (dictum); *see United States v. Gonzalez*, 250 F.3d 923, 926 (5th Cir. 2001) (noting that dicta are nonbinding but may be persuasive).

*Schwarzer,* 2021 WL 6060002, at *1.

In this case, Plaintiff admits he was promptly notified a letter to him was denied or refused because it was on unapproved paper. (D.E. 1, p. 4). Thus, Plaintiff was provided notice. Plaintiff's due process claim centers around whether he was given an opportunity to be heard. The Defendants' summary judgment evidence includes an explanation of the inmate appeal process in instances of rejected mail. (D.E. 46-1, p. 3). The policy included a list of categories of rejected correspondence that had consistently been denied by the Director's Review Committee ("DRC"), which is the TDCJ appellate authority for inmate complaints regarding rejected mail. (D.E. 46-1). This "non-appealable list" included correspondence on colored or decorated paper. (D.E. 46-1). Thus, Plaintiff's allegation that he was not

provided an opportunity to appeal the rejection of the letter to the DRC is uncontested. However, the inability of Plaintiff to seek review through the DRC does not mean Plaintiff was denied the right to be heard concerning the rejected letter.

Plaintiff had the opportunity to be heard by utilizing the inmate grievance policy. Plaintiff's complaint further indicates that Plaintiff utilized the grievance policy to complain about the inmate correspondence policy and the rejection of his letter. (D.E. 1, pp. 4-5). Plaintiff's dissatisfaction with the rejection of his grievance does not amount to a denial of his right to due process. The Fifth Circuit has consistently held that the inmate grievance system is sufficient to satisfy the due process requirements following the rejection or confiscation of inmate mail. *See Stauffer v. Gearhart*, 741 F.3d 574, 587 (5th Cir. 2014) (due process requirements were satisfied because the inmate was able to make his claims through the grievance process and officials responded with a written justification for their denial of relief); *Evans v. Baker*, 442 F. App'x 108, 110 (5th Cir. 2011) (inmate "received the due process protections required when he received notice of the basis for the confiscation of the subject property and a fair opportunity to rebut the allegations concerning his ownership of the property at the [disciplinary] hearing and in his grievances"). United States District Judge George Hanks reached the same conclusion in *Clemons v. Lumpkin*, No. 4:21-cv-4052, 2023 WL 4828378 (S.D. Tex. July 27, 2023) (rejecting inmate Plaintiff's procedural due process claims concerning confiscated mail where inmate had access to the inmate grievance system).

Consistent with the cases discussed above and the undisputed summary judgment evidence before the Court in this case, the undersigned recommends Defendant Salles' Motion for Summary Judgment be GRANTED as to Plaintiff's due process claim because Plaintiff cannot show any official violated a statutory or constitutional right of Plaintiff.

The undersigned does not address in detail the second part of the qualified immunity analysis for either Plaintiff's First Amendment or Fourteenth Amendment claims. The second step is whether the right which was violated was clearly established. The undersigned does not reach the second step on either claim because there was no violation of a statutory or constitutional right in the instant case. However, the undersigned notes that this case does not involve egregious conduct by a rogue officer. Ms. Salles was following TDCJ policies and she was performing her official function as a mail room supervisor to assist in trying to limit the introduction of narcotics into the prison. She was enforcing an official TDCJ policy which, according to the undersigned's research, has never been found to be unconstitutional by any court. The purposes of qualified immunity identified by the Supreme Court are "(1) preventing unwarranted timidity in the exercise of official duties; (2) ensuring that highly skilled and qualified candidates are not deterred from public service by the threat of liability; and (3) protecting public employees—and their work—from all of the distraction that litigation entails." *Perniciaro v. Lea*, 901 F.3d 241, 253 (5th Cir. 2018). Ms. Salle's conduct in this case is, and should be, protected by the doctrine qualified immunity.

## V.      RECOMMENDATION

For the reasons stated above, the undersigned RECOMMENDS Defendants' Motion for Summary Judgment (D.E. 46) be GRANTED and this case be DISMISSED. If the Court adopts this Memorandum and Recommendation all of Plaintiff's claims will have been dismissed and the Court should enter Final Judgment against Plaintiff.

Respectfully submitted on March 11, 2024.

Jason B. Libby
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).